FILED
 2010 Jun-17 PM 03:09
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JUNIOR D. PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-G-1655-NE |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Junior D. Phillips, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether he has a severe impairment;

(3) whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

    In the instant case, ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 14]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Digby found that the plaintiff "has the following severe impairments: migraine headaches and lumbar degenerative disc disease. . . ." [R. 13]. The plaintiff claims disability because of severe migraine headaches and back pain. [R. 102]. In applying the Eleventh Circuit's pain standard, the ALJ found that:

> Although the claimant meets part one of this standard, with evidence of underlying medical conditions, he fails to meet part two. Medical evidence shows the claimant has underlying medical conditions, but it does not support his allegations of severe and chronic pain and limitation of function to the degree that it would preclude the performance of substantial gainful activity. These allegations are inconsistent with the claimant's daily living activities including helping care for his children, driving, and shopping for groceries. Testimony indicated that the claimant has become the caretaker for his children and sleeps all day, which is clearly a lifestyle choice.
>
> The undersigned notes that the record does not substantiate the claimant's allegations of debilitating migraine headaches. In October 2006, the claimant reportedly told a treating physician that his severe migraines were "rare," although he did have "some stress-related headaches."

[R. 16].

The plaintiff testified that he has had migraines "ever since I was 6 years old." [R. 36]. On March 6, 2002, the plaintiff was seen by Robert G. Ford, M.D., a neurologist, of the Ford Headache Clinic. He reported to Dr. Ford that he had severe headaches since he was a teenager, but they were worsening the past year with two to three severe attacks per week and four to five per month:

> Headaches are frontal bitemporal, generalized with phonophobia, photophobia and neck stiffness, nausea and vomiting and early morning awakening with headache. Headaches lasting up to four days. Has black squiggle aura a few minutes prior to headache onset. Headaches are stabbing and throbbing. Four days severe and one day mild to moderate headache in fourteen days. Missed six work days in three months and had two urgent care visits in six months. Markedly positive family history for migraine.

[R. 153]. Dr. Ford's diagnosis was migraine with aura, his treatment plan was Verelan as a preventive, Esgic Plus and Reglan for symptoms, and Axert as an abortive no more than two days per week. [Id.]. A June 13, 2002, treatment note indicates the plaintiff stopped his preventive medicine "because it dropped his blood pressure to 92/63 three weeks ago." [R. 152]. By October 7, 2004, his headaches had improved with Corgard. [R. 149].

On May 26, 2005, the plaintiff went to the Woodland Medical Center emergency room complaining of a migraine with vision loss, blurred vision, dizziness and neck stiffness. [R. 155]. At CT scan of the plaintiff's head that same day showed no acute process identified. [R. 156]. The plaintiff began treatment with Chris LaGanke, M.D., a neurologist, on June 15, 2005. Dr. LaGanke noted:

> He states that his headaches are generally left frontal temporal in location. He describes them as stabbing and throbbing in character. He reports positive nausea and no significant vomiting with these headaches. he does report photophobia and phonophobia with the headaches. He states that the headaches can last up to several days in duration.
>
> The current frequency of headaches is one per week. He states that they have increased in frequency over the last couple of months. He also reports some blurred vision and seeing spots along with his headaches. He states

> that the last headache he had, he had just brief vision loss in both eyes with the headache.
>
> He generally seeks a quiet, dark room to relieve his headaches.
>
> He has been seen by Dr. Ford in Birmingham in the past. He has evidently been placed on blood pressure medication for his headaches. One of the blood pressure medications (Verelan) caused hypotension and therefore he was taken off of this. He states that none of the medications that were used for preventative [sic] management were of much benefit.

[R. 168]. On September 21, 2005, the plaintiff reported to Dr. LaGanke that he was getting a migraine about once per week, and had missed six days of work since his last visit. [R. 166]. An April 4, 2006, treatment note shows the plaintiff's medications included Depakote, Lortab 7.5 and Tylenol. [R. 164]. Dr. LaGanke noted that his migraines had improved, but also noted lumbosacral radiculopathy. [R. 165]. However, a May 5, 2006, MRI of the lumbar spine was essentially normal. [R. 163]. He was seen by Dr. LaGanke for follow up on October 6, 2006, and, as the ALJ noted, he reported "rare severe migraines" on that date. [R. 183]. However, Dr. LaGanke also stated:

> He does have some stress-related headaches. He states that his grandmother passed recently. He was close to her. He has some warning visual spots as an aura. He states that the left side of his scalp stays sensitive frequently. His biggest problem has been his low back pain. He states that he cannot even bend over without having severe pain.

[Id.].

The ALJ cited to the plaintiff's activities of daily living as a reason for discrediting the plaintiff's pain testimony. [R. 16]. The ALJ stated that the plaintiff helped care for his children, but the plaintiff actually testified:

> A day that I'm not having a headache I can get up and watch my kids and help them with something if they need it. On a day when I've got a migraine I can't get up and help them do nothing or watch them. They have to watch – most of the time my son locks the door and they watch theirself [sic] at night until their momma comes home.

[R. 35]. The ALJ stated that the plaintiff drives, but he failed to report that in the plaintiff's Physical Activities of Daily Living Questionnaire, the plaintiff answered affirmatively to the question, "Does your condition(s) limit you from performing this activity?" The plaintiff explained:

> It hurts to drive. And when I start having my headaches, I have to stop and call some[one] until someone comes and gets me. And I forget where I [am] going. I have to sit and think about 5 minutes where I'm going. I use[d] to like to drive and I just can't drive hardly anymore.

[R. 100]. The ALJ stated that the plaintiff shops for groceries, but failed to address the plaintiff's testimony that his wife does all the shopping. [R. 99]. At the hearing, the ALJ questioned the plaintiff:

> Q: Do you go to the grocery store?
>
> A: No, my wife goes to the store.
>
> Q: When is the last time you went to the grocery store?
>
> A: I'd have to say probably a month ago when we stopped by there coming from church, and then I didn't get out and go in with her. I stood outside out there in the parking lot.

[R. 40].

The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities

noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989). The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

The medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

The plaintiff testified that two to three times a month, he experiences migraines that confine him to a dark, noiseless bedroom for two days to a week at a time. [R. 35]. At the hearing, the plaintiff's attorney examined John McKinney, a vocational expert:

> Q: What would be the maximum allowable absences in unskilled work?
>
> A: Generally if it [is] greater than one day per month, and that is generally where the threshold gets crossed where it's impossible to maintain employment.

Q: And over that it would not be allowed?

A: That's right.

[R. 47]. Taking the plaintiff's testimony as true, he would have more than one absence from work a month, and would not be able to maintain employment.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 17 June 2010.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.